# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

PRIMUS GROUP, LLC,            )

                                    )

        Plaintiff,           )     Case No. 2:19-cv-03450

                                    )

   v.                    )     Judge Edmund A. Sargus, Jr.

                                    )

SMITH & WESSON CORP., *et al.*    )     Magistrate Judge Kimberly A. Jolson

                                    )

        Defendants.     )

## DEFENDANTS' MOTION TO DISMISS

Defendants Smith & Wesson Corp., Remington Arms Company, LLC, Sig Sauer , Inc., Sturm, Ruger & Company, Inc., Colt's Manufacturing Company, LLC and Armalite ("Defendants") move pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing Plaintiff's Emergency Application for an Immediate Temporary Writ Enjoining the Distribution of Assault Weapons, and for Preliminary and Permanent Injunctive Relief ("Complaint") and denying Plaintiff's request for preliminary and permanent injunctive relief. In support of their Motion, Defendants submit herewith their Memorandum of Law in Support of Motion to Dismiss.[1]

---

[1] Bushmaster Firearms International and DPMS are named as defendants but they are not legal entities. They are brand names for firearms manufactured by Remington Arms Company LLC.

Respectfully submitted,

*/s/ Robert W. Trafford*
Robert W. Trafford (0024447), Trial Attorney
Elizabeth L. Moyo (0081051)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 South High Street
Columbus, Ohio 43215
Tel: (614) 227-2149 / Fax: (614) 227-2100
email: rtrafford@porterwright.com
emoyo@porterwright.com
*Attorneys for Defendants Smith & Wesson Corp.; Remington Arms Company LLC; Bushmaster Firearms International; Sig Sauer, Inc.; DPMS Firearms; Sturm, Ruger & Co., Inc.; Colt's Manufacturing Company, LLC; and Armalite*

John Renzulli (*pro hac vice* motion pending)
Christopher Renzulli (*pro hac vice* motion pending)
RENZULLI LAW FIRM, LLP
One North Broadway, Suite 1005
White Plains, New York 10601
Tel: 914-285-0700 / Fax: 914-285-1213
Email: jrenzulli@renzullilaw.com
crenzulli@renzullilaw.com
*Attorneys for Colt's Manufacturing Company, LLC*

Robert L. Joyce (*pro hac vice* application forthcoming)
LITTLETON PARK JOYCE UGHETTA & KELLY LLP
4 Manhattanville Road, Suite 202
Purchase, New York 10577
Tel: (914) 417-3412 / Fax; (914) 417-3401
Email: Robert.Joyce@littletonpark.com
*Attorneys for Sig Sauer, Inc.*

Edward Scheideman (admitted *pro hac vice*)
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
Tel: 202.799.4534 / Fax: 202.799.5534
Email: edward.scheideman@dlapiper.com
*Attorneys for Smith & Wesson Corp nka American Outdoor Brands and Sales Company*

Andrew A. Lothson (admitted *pro hac vice*)
SWANSON, MARTIN & BELL, LLP
330 North Wabash, Suite 3300
Chicago, IL 60611
Tel: (312) 321-9100 / Fax: (312) 321-0990
Email: alothson@smbtrials.com
*Attorneys for Remington Arms Company, LLC*

James B. Vogts (admitted *pro hac vice*)
SWANSON, MARTIN & BELL, LLP
330 North Wabash, Suite 3300
Chicago, IL 60611
Tel: (312) 321-9100 / Fax: (312) 321-0990
Email: jvogts@smbtrials.com
*Attorneys for Sturm, Ruger & Company, Inc.*

Gaya Shanmuganatha (admitted *pro hac vice*)
TIFFANY & BOSCO P.A.
2525 E. Camelback Road, Seventh Floor
Phoenix, Arizona 85016
Tel: 602-255-6000 / Fax: 602-255-0103
Email: gs@tblaw.com
*Attorneys for Armalite*

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| PRIMUS GROUP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:19-cv-03450 |
| | ) | |
| v. | ) | Judge Edmund A. Sargus, Jr. |
| | ) | |
| SMITH & WESSON CORP., *et al.* | ) | Magistrate Judge Kimberly A. Jolson |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

## SUMMARY OF PRINCIPAL ARGUMENTS

**INTRODUCTION** .............................................................................1

Plaintiff's Complaint alleging RICO and intentional misrepresentation theories should be dismissed and Plaintiff's request for a preliminary injunction should denied because Plaintiff is unlikely to succeed on the merits of its claims. Plaintiff fails to plead facts in support of multiple elements of these claims. Moreover, Defendants have federal and state statutory immunity for Plaintiff's claims, requiring immediate dismissal of the Complaint, and the relief Plaintiff seeks, if granted, would violate the separation of powers doctrine. Plaintiff also lacks Article III standing to seek injunctive relief.

**THE LEGAL STANDARD** ...............................................................3

Plaintiff's RICO claims, and its intentional misrepresentation allegations must satisfy the pleading requirements established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and Federal Rule of Civil Procedure 9(b), which requires that the circumstances constituting alleged fraud be pleaded with particularity.

**ARGUMENT** ..................................................................................5

I.    **The injunctive relief sought in this case would intrude on the province of the legislature and violate the separation of powers doctrine....................5**

The formulation of firearms policy in this country is the province of legislatures, and the court's use of injunctive remedies to impose additional regulations nationwide on activities already subject to extensive federal, state and local statutory laws and regulations would violate the separation of powers doctrine. *See, e.g., City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1121 (Ill. 2004) ("[T]here are strong public policy reasons to defer to the legislature in the matter of regulating the manufacture, distribution, and sale of firearms.").

II.    **Defendants have statutory immunity for plaintiff's claims under federal and state law....................................................................................7**

The Protection of Lawful Commerce in Arms Act ("PLCAA") provides firearm manufacturers with immunity for, *inter alia*, injunctive relief claims arising from the criminal misuse of firearms by third parties. 15 U.S.C. § 7901 *et seq*. Also, Ohio Revised Code Section 2305.401 provides immunity to "members of the firearm industry" for, *inter alia*, civil actions seeking injunctive relief for harm resulting from the operation or discharge of a firearm. These federal and state statutes require immediate dismissal of Plaintiff's Complaint.

**III.** **Plaintiff has failed to state a plausible claim for relief under the RICO statutes.** ..............................................................................9

To state a claim for relief under RICO, a plaintiff must plead with particularity each of the following elements of its racketeering claim: (1) two or more predicate offenses constituting racketeering activity; (2) the existence of a RICO enterprise; (3) a pattern of racketeering activity undertaken by the RICO enterprise; and (4) conduct amounting to the direct participation in the enterprise's affairs. *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000) *see also Ouwinga v. Benistar 419 Plan Servs., Inc.,* 694 F. 3d 783, 791 (6th Cir. 2012). Additionally, civil plaintiffs must also plead facts which show that the alleged RICO violation was the proximate cause of Plaintiff's injury. *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 484 (6th Cir. 2013). Plaintiff fails to plausibly allege any of the required elements necessary to state such a claim.

**A. Plaintiff has failed to plead with particularity predicate acts of mail or wire fraud** ..............................................................................11

Mail and wire fraud require the following elements: (1) intentional deception or participation in a scheme to defraud another of money or property, (2) the use of mail or interstate wire communication to further that scheme; and (3) a specific intent to deceive or defraud. *Heinrich v. Waiting Angels Adoption Services, Inc*., 668 F.3d 393, 403 (6th Cir. 2012). Further, Rule 9(b) requires a plaintiff to: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F. 3d 564, 570 (6th Cir. 2008) (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)). Plaintiff alleges no facts to support its mail and wire fraud claims.

**B. Plaintiff has failed to plead the existence and nature of a RICO enterprise** ..............................................................................12

Plaintiff fails to plead any facts, let alone particularized facts supporting the existence of any RICO enterprise and, instead, devotes only a single paragraph in its Complaint to the existence of an enterprise. That paragraph is purely conclusory and fails to allege any of the required elements necessary to plead a RICO enterprise.

**(i)** **Plaintiff fails to plead facts showing a distinction between the RICO "person" and the RICO "enterprise."** ..................13

To establish liability under § 1962(c), one must allege and prove the existence of two distinct entities: (1) a "person;" and (2) an "enterprise" that is not simply the same person by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001). This

is because RICO "liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *Miller v. Countrywide Home Loans*, 747 F. Supp. 2d 947, 964-65 (S.D. Ohio 2010). Plaintiff fails to allege any RICO person, let alone how any RICO person is separate and distinct from any alleged RICO enterprise.

**(ii)**      **Plaintiff fails to plead facts showing the members of the enterprise shared a common purpose, relationship, or longevity.** **………………………………………………………….... 14**

An association-in-fact enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 945-46 (2009). An association-in-fact enterprise also "require[s] a certain amount of organizational structure which eliminates simple conspiracies from the Act's reach." *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000), *abrogated on other grounds, Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). Plaintiff fails to plead any facts meeting these requirements.

**(iii)**      **Plaintiff fails to plead facts showing how the members of the alleged enterprise coordinated as a continuing unit. ……... 15**

To properly allege an association-in-fact enterprise, a RICO plaintiff must also "cogently allege activity 'that would show *ongoing, coordinated behavior among the defendants* . . . .'" *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000) (citing *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993)). Specifically, to survive dismissal, a complaint must contain facts suggesting that the behavior of the listed entities is "coordinated" in such a way that they function as a continuing unit. *Begala*, 214 F.3d at 781. Plaintiff fails to plead any facts in support of these requirements.

**(iv)**      **Plaintiff fails to plead facts showing how each member of the enterprise participated in the conduct of the enterprise's affairs.** **………………………………………………………….... 16**

[F]or a defendant to violate § 1962(c), that defendant must have not merely participated in the enterprise's affairs, 'but *in the conduct* of the enterprise's affairs." 18 U.S.C. § 1962(c); *Ouwinga v. Benistar 419 Plan Servs.. Inc.,* 694 F. 3d 783, 792 (6th Cir. 2012). Participation in the conduct of an enterprise's affairs requires proof that the defendant participated in the "operation or management" of

the enterprise. *Reeves v. Ernst & Young*, 507 U.S. 170, 183 (1993). Plaintiff fails to plead any facts in support of this requirement.

**C. Plaintiff has failed to plead a pattern of racketeering activity......... 16**

In addition to alleging predicate acts and the existence of a RICO enterprise, to avoid dismissal, a plaintiff must also allege that the enterprise engaged in a "pattern of racketeering activity." Merely alleging two predicate acts does not satisfy the pattern requirement. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n.14 (1985). Rather, the plaintiff must show "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–39 (1989) Plaintiff fails to plead any facts in support of predicate acts of racketeering, a RICO enterprise through which any racketeering activity might occur, and certainly no "pattern of racketeering activity."

**D. Plaintiff has failed to plead any RICO injury. ……………….............17**

To avoid dismissal, a Plaintiff also must properly plead RICO injury: that a RICO violation was the "proximate cause of the injury to their business or property." *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 484 (6th Cir. 2013). Under 18 U.S.C. 1964(c), a Plaintiff must plead both but-for causation and proximate causation. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 653–54 (2008). Plaintiffs must show "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992); *see also Perry v. Am. Tobacco Co., Inc.*, 324 F.3d 845, 850 (6th Cir. 2003). Plaintiff fails to plead any RICO injury.

**E. Private civil RICO plaintiffs cannot maintain actions for equitable relief…………………………………………………………………… 18**

The weight of authority holds that private RICO plaintiffs cannot maintain a civil RICO claim for injunctive relief. *Religious Technology Ctr. v. Wollersheim*, 762 F. 2d 1076 (9th Cir. 1986); *see also, Ganey v. Raffone*, 91 F. 3d 143 (6th Cir. 1996); *contra National Organization for Woman, Inc. v. Scheidler*, 267 F. 3d 687 (7th Cir. 2001), *rev'd on other grounds*, 547 U.S. 393 (2006).

**IV. Plaintiff has failed to plead the elements of an intentional misrepresentation claim. ……………………………………………………………………………19**

Plaintiff has failed to plead the elements of an intentional misrepresentation claim under Ohio law: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to a transaction, (3) made falsely, with knowledge of its falsity, or with disregard and recklessness as to the veracity of the veracity of the representation that knowledge may be inferred, (4) with

intent of misleading another into relying on the representation or concealment, (5) justifiable reliance on the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Burr v. Stark Cty. Bd. Of Commrs.*, 23 Ohio State 3d 69, 491 N.E. 2d 1101 (Ohio 1986).

**V.      The Court does not have jurisdiction to hear Plaintiff's case because Plaintiff does not have standing to seek injunctive relief............................ 20**

The judicial power of Article III courts is limited to cases or controversies. U.S. CONST. ART. 2 § 1.  To have standing, three elements must be present: (1) the plaintiff must have suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be causal connection between the injury and the conduct complained of that is fairly traceable to the defendant's action, and not the result of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision of the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) (injury in fact, causation and redressability). Plaintiff has not met its threshold burden of establishing these elements.

**CONCLUSION**............................................................................**... 23**

Defendants respectfully request that Plaintiff's Emergency Application for an Immediate Temporary Writ Enjoining the Distribution of Assault Weapons, and for Preliminary and Permanent Injunctive Relief be dismissed and Plaintiff's request for preliminary and permanent injunctive relief be denied.

<u>**MEMORANDUM IN SUPPORT**</u>

Defendants Smith & Wesson Corp., Remington Arms Company, LLC, Sig Sauer, Inc., Sturm, Ruger & Company, Inc., Colt's Manufacturing Company, LLC and Armalite ("Defendants") submit the following Memorandum of Law in support of their Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss Plaintiff's Emergency Application for an Immediate Temporary Writ Enjoining the Distribution of Assault Weapons, and for Preliminary and Permanent Injunctive Relief ("Complaint").[1]

<u>**INTRODUCTION**</u>

Plaintiff [2] asks this Court to take the extraordinary step of issuing a nationwide injunction prohibiting Defendants' lawful manufacture and nationwide sale of certain semi-automatic firearms. Plaintiff predicates its request for such relief on nothing more than conclusory statements that Defendants, in some unexplained way, have violated the Racketeer Influenced and Corrupt Organization Act ("RICO") and engaged in intentional misrepresentation by allegedly misrepresenting to the public that the firearms it seeks to ban are used by law-abiding persons for lawful purposes. (Doc. 1 at ¶19). The relief Plaintiff seeks is not merely a ban on newly manufactured firearms, but also "drastic … judicial action" to "recall" firearms "already in the hands of the public." *Id.* [3]

---

[1]      Federal Rule of Civil Procedure 7(a) describes the "[o]nly" pleadings that are "allowed." Although Plaintiff captions its pleading as an Application, it should be treated as a complaint under the Rule.

[2]      Primus Group LLC operate the "XO Nightclub" in downtown Columbus. https://<u>www.facebook.com/XO-Nightclub-428770720660253</u> (last viewed Aug. 30, 2019).

[3]      Plaintiff claims to be a putative class representative and seeks to represent a class of "all persons … in the United States" who may become crime victims. (Doc. 1 at ¶8). Under Federal Rules of Civil Procedure 23(b)(1) and 23(b)(2), Plaintiff's putative class allegations are legally deficient and are subject to dismissal under Rule 12(b)(6). The putative class is

Defendants are federally licensed firearm manufacturers who manufacture and sell firearms of various types for civilian sporting, hunting and self-defense use. Among the firearms Defendants manufacture and sell for these lawful uses are certain semi-automatic rifles, generally referred to as AR-type rifles. They are "the best-selling" rifle type throughout the United States, Nicholas J. Johnson, *Supply Restrictions at the Margins of Heller and the Abortion Analogue*, 60 Hastings L.J. 1285, 1296 (2009), and are "widely accepted as lawful possessions." *Staples v. United States*, 511 U.S. 600, 612 (1994). AR-type rifles are lawfully sold and possessed by law-abiding persons under federal law and the laws of all but six states and a small number of local jurisdictions.

"Millions of Americans" own these firearms for lawful purposes, including hunting, self-defense and target shooting. *Shew v. Malloy*, 994 F. Supp.2d 234, 245 (D. Conn. 2014), *aff'd in part, rev'd in part, sub nom.*, *New York State Rifle & Pistol Ass'n. v. Cuomo*, 804 F. 3d 242 (2d Cir. 2015), *cert denied sub nom.*, *Shew v. Malloy*, 136 S.Ct. 2486 (2016); *Friedman v. Highland Park*, 784 F. 3d 406, 411 (7th Cir. 2015) (recognizing that semi-automatic rifles are useful for self-defense); *Heller v. District of Columbia*, 670 F. 3d 1244, 1288 (D.C. Cir. 2019) (Kavanaugh, J. dissenting) (recognizing that semi-automatic rifles are commonly used for self-defense, hunting and target shooting). Plaintiff's allegation that AR-type rifles are not owned and used by law abiding persons for lawful purposes directly contradicts factual findings made by the courts, as well as the judgment of Congress.

However, Plaintiffs' Complaint and application for injunctive relief should be dismissed because it is *legally deficient*—for a multitude of reasons, all of which demonstrate that Plaintiff cannot succeed on the merits of its claims. First, the relief Plaintiff seeks, if granted, would

unascertainable and unmanageable as a matter of law. Defendants reserve the right to challenge these allegations, if necessary.

violate the separation of powers doctrine. Second, federal and state statutes provide immunity to firearm manufacturers from civil actions seeking injunctive relief for harm resulting from the criminal misuse of firearms by third parties, which require immediate dismissal of this case. Third, the Court does not have subject matter jurisdiction to hear Plaintiff's claims because Plaintiff has failed to allege an actual case or controversy conferring Article III standing.

Plaintiff's Complaint and application for injunctive relief should also be dismissed because Plaintiff fails to state any claim, let alone one likely to succeed on the merits—either under a RICO or an intentional misrepresentation theory. It is not an overstatement in this case to say that Plaintiff literally has failed to plead any of the substantive elements of these claims. Indeed, Plaintiff has not plausibly alleged the required elements of RICO, namely: (1) predicate acts necessary to state a claim under RICO; (2) a valid RICO "enterprise"; (3) a "pattern of racketeering activity"; or (4) any RICO injury. A failure to plausibly allege any one of these elements is fatal to Plaintiff's RICO claims, and Plaintiff plausibly alleges none.

Plaintiff's intentional misrepresentation claim fails as a matter of law because Plaintiff does not, as it must, plausibly allege: (1) the time, place and content of each Defendant's alleged misrepresentation; (2) that Plaintiff was engaged in a transaction with any Defendant; (3) that any Defendant intended to mislead Plaintiff; or (4) that a plausible factual basis for Plaintiff's alleged reliance on any such representation exists.

For any or all of these reasons, Plaintiff's Complaint should be dismissed and its request for preliminary and permanent injunctive relief should be denied.

### THE LEGAL STANDARD

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that to survive a motion to dismiss for failure to state a claim, a plaintiff must plead "facts" that

are sufficient to "nudge the[] claims across the line from conceivable to plausible." *Id*. at 570. Doing so "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. In *Ashcroft v. Iqbal*, the Supreme Court reaffirmed the ruling in *Twombly* that only a complaint stating a "plausible" claim for relief will survive a motion to dismiss. 556 U.S. 662, 679 (2009).

The Supreme Court prescribed a "two-pronged" approach which should be employed by the lower courts in evaluating the sufficiency of allegations under Rule 12(b)(6). *Iqbal*, 556 U.S at 679. First, a lower court considering a motion to dismiss "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Under this standard, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555). "[M]ere conclusory statements . . . do not suffice." *Id*. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).

The *Twombly* and *Iqbal* pleading requirements are heightened in cases alleging RICO violations and common law intentional misrepresentation, where they also must meet the rigorous pleading standard of Rule 9(b). *Heinrich v. Waiting Angels Adoption Services, Inc*., 668 F.3d 393, 403 (6th Cir. 2012). Rule 9(b) requires a party to allege "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Plaintiff's allegations do not come close to satisfying these pleading standards.

<u>**ARGUMENT**</u>

I.    **The injunctive relief sought in this case would intrude on the province of the legislature and violate the separation of powers doctrine.**

Without question, the Complaint seeks relief which has been the subject of extensive legislative action across the country. Indeed, the manufacture, sale and possession of firearms are subject to myriad laws and regulations at the federal, state and local levels of government. The formulation of firearms policy has consistently been seen by courts across the country as the province of these legislative bodies. For this reason, courts have declined to use their equitable powers and impose injunctive remedies on activities already the subject of regulation. *See, e.g., City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1121 (Ill. 2004) ("[T]here are strong public policy reasons to defer to the legislature in the matter of regulating the manufacture, distribution, and sale of firearms."); *Penelas v. Arms Tech, Inc.*, 778 So.2d 1042, 1045 (Fla. App. 2001) ("[T]he judiciary is not empowered to 'enact' regulatory measures in the guise of injunctive relief. The power to legislate belongs not to the judicial branch of government, but to the legislative branch."); *People v. Sturm, Ruger & Co., Inc.*, 761 N.Y.S. 2d 192, 203 (N.Y. App. 2003), *leave to appeal denied*, 100 N.Y. 2d 514 (2003) ("As for those societal problems associated with, or following, legal handgun manufacture and marketing, their resolution is best left to the legislative and executive branches.").

Here, the injunctive relief sought by Plaintiff, whereby the lawful manufacture and sale of commonly owned firearms would cease by court order, would plainly intrude on the legislative prerogative to determine firearms policy. Legislative branches of government make policy decisions regarding firearms, which reflect, in theory, what the majority of citizens believe the law should be. Unlike the courts, which seek to apply the considered judgment of legislatures as expressed through statutes, it falls to the legislatures to make those considered

policy judgments in the first instance, which is particularly important in policy areas on which the public is divided. In the context of firearms regulation particularly, "the legislature is far better equipped to make sensitive policy judgments (within constitutional limits) concerning the dangers" of firearms. *Kachalasky v. County of Westchester*, 701 F. 3d 81, 97 (2d Cir. 2012), *cert. denied*, 569 U.S. 918 (2013). *See also New York State Rifle & Pistol Ass'n.*, 804 F. 3d at 261 ("We remain mindful that '[i]n the context of firearms regulation, the legislature is far better equipped than the judiciary to make sensitive policy judgments … concerning the dangers of carrying firearms and the manner to combat those risks.'") (internal citations omitted).

That the injunction Plaintiff seeks from this Court is a mirror image of now defunct federal legislation demonstrates just how directly the Plaintiff asks this Court to tread on the prerogatives of the legislature. Plaintiff seeks a nationwide injunction that would reinstate the former Federal Assault Weapons Ban enacted by Congress, which Congress enacted in 1994 and, by its express terms, expired in 2004. (formerly at 18 U.S.C. § 922(v)(1) (1994)).[4] The Court should refuse Plaintiff's invitation to reverse a policy judgment made by Congress regarding the types of firearms that may be lawfully manufactured and sold. *See Caveny v. Raven Arms Co.*, 665 F. Supp. 530, 534 (S.D. Ohio 1987), *aff'd,* 849 F.2d 608 (6th Cir. 1988) (whether the risk posed by a particular type of firearm outweighs its utility for lawful uses is not "a matter the courts should decide on a case-by-case basis."); *In re Firearms Cases*, 126 Cal. App. 4th 959, 985 (Cal. App. 2005) ("Establishing public policy is primarily a legislative function and not a judicial function, especially in an area [firearms] that is subject to heavy regulation.").

---

[4]     The definition of formerly banned "semi-automatic assault weapons" was found at 18 U.S.C. § 921(30) (1994). The firearms listed and described in Section 921(30) include the firearms that Plaintiff seeks to enjoin in this case. *See* Doc. 2-4.

## II. Defendants have statutory immunity for plaintiff's claims under federal and state law.

Preserving the separation of powers among the branches of government is a primary purpose of the Protection of Lawful Commerce in Arms Act ("PLCAA"). 15 U.S.C. § 7901 *et seq*. The PLCAA provides firearm manufacturers with immunity from, *inter alia*, injunctive relief claims arising from the criminal misuse of firearms by third parties. Subject to certain exceptions that are inapplicable here, any claim that meets the definition of a "qualified civil liability action may not be brought in any Federal or State Court." 15 U.S.C. § 7902(a). A "qualified civil liability action" is:

> [A] civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party."

15 U.S.C. § 7903(5)(A). A "qualified product" is a firearm as defined in 18 U.S.C. § 921(a)(3)(A) and (B), which includes the firearms at issue in this case.

Congress found that "[t]he manufacture, importation, possession, sale, and use of firearms and ammunition in the United States are heavily regulated by Federal, State, and local laws, 15 U.S.C. § 7901(a)(4), and it enacted the PLCAA "[t]o preserve and protect the separation of powers doctrine." 15 U.S.C. § 7901(b)(6). Congress found that the liability actions for which it provided immunity constitute threats to the doctrine by using "the judicial branch to circumvent the legislative branch of government." 15 U.S.C. § 7901(a)(8). The PLCAA was also enacted to preserve citizens' "access to a supply of firearms and ammunition for all lawful purposes, including hunting, self-defense, collecting, and competitive or recreational shooting." 15 U.S.C. § 7901(b)(2). Plaintiff's claim for injunctive relief plainly thwarts the purposes of the PLCAA and is prohibited by the statute's plain language. Although Plaintiff has not been harmed

by a third party's criminal use of a firearm, it seeks protection against a perceived threat of such harm, and the PLCAA requires immediate dismissal of Plaintiff's case.[5]

Plaintiff's unadorned allegation that the "Defendants placed weapons manufactured to kill people in the hands of persons known to be mentally disturbed or intent on committing horrific acts," (Doc. 1 at ¶ 24), is an extraordinary claim, unsupported by a single fact, let alone a set of facts that would make such a scheme even remotely plausible. The only inference that can be drawn from Plaintiff's conclusory allegations is that Defendants have lawfully manufactured legal firearms that can be criminally misused by unknown third parties to cause harm. The PLCAA was enacted specifically to provide immunity from such a claim. *See* 15 U.S.C. § 7901(b)(1) (PLCAA purposes include prohibiting "causes of action against manufacturers" for harm "caused by the criminal or unlawful misuse" of firearms that "functioned as designed and intended.").

Plaintiff's case is also barred under Ohio Revised Code Section 2305.401, which, *inter alia*, provides immunity to "members of the firearms industry" for civil actions seeking injunctive relief for harm "allegedly sustained by any person as a result of the operation or

---

[5]    Every federal and state appellate court to have addressed the constitutionality of the PLCAA has found it constitutional. *See City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 392-98 (2d Cir. 2008), *cert. denied*, 129 S. Ct. 3320 (2009); *Ileto v. Glock*, 565 F.3d 1126, 1138-42 (9th Cir. 2009), *cert. denied*, 130 S. Ct. 3320 (2010); *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 172-82 (D.C. App. 2008), *cert. denied*, 129 S. Ct. 1579 (2009); *Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 388-92 (Alaska 2013); *Adames v. Sheehan*, 909 N.E.2d 742, 764-65 (Ill. 2009), *cert. denied*, 130 S. Ct. 1014 (2009). In addition, at least two trial courts have issued opinions affirming the PLCAA's constitutionality. *See Estate of Charlot v. Bushmaster Firearms, Inc.*, 628 F. Supp. 2d 174, 182-86 (D.D.C. 2009); *Gilland v. Sportsmen's Outpost, Inc.*, No. X04CV0950327655, 2011 WL 2479693, at *16-23 (Conn. Super. May 26, 2011). And numerous courts have applied the PLCAA to dismiss lawsuits without confronting challenges to its constitutionality. *See, e.g.*, *Al-Salihi v. Gander Mountain, Inc.*, 2013 WL 5310214 (N.D.N.Y. Sept. 20, 2013); *Jeffries v. District of Columbia*, 916 F. Supp. 2d 42 (D.D.C. 2013); *Bannerman v. Mountain State Pawn, Inc.*, No. 3:10-CV-46, 2010 WL 9103469 (N.D.W.Va. Nov. 5, 2010), *aff'd*, 436 F. App'x 151 (4th Cir. 2011); *Ryan v. Hughes-Ortiz*, 81 Mass.App.Ct. 90 (Mass. App. 2012).

discharge of a firearm." R.C. § 2305.401(B)(1). A firearm industry member "forfeits" immunity under limited circumstances not pleaded by Plaintiff in this case: (1) if the industry member discharges the firearm resulting in the harm, R.C. § 2305.401(6)(B)(2); or (2) if the industry member sells a firearm to a person who is prohibited under Federal or State law from possessing a firearm. R.C. § 2305.401(6)(B)(3).[6]

Plaintiff has not alleged facts that any Defendant sold a firearm to a criminal or other prohibited person, or that any Defendant is even in the business of selling firearms directly to non-licensed persons. *See Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'") Again, Plaintiff makes extraordinary allegations without requisite factual content to "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Without more, Plaintiff has not pleaded a cause of action that falls within the R.C. § 2305.401(6)(B)(3) exception to immunity. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 557). Conclusory allegations are not entitled to the presumption of truth. *Id.* at 681.

### III. Plaintiff has failed to state a plausible claim for relief under the RICO statutes.

Other than providing a formulaic recitation of RICO's elements, Plaintiff does nothing to allege requisite facts supporting a RICO claim, even under the most charitable reading of the Complaint. To state a claim for relief under RICO, a plaintiff must plead with particularity each of the following elements of its racketeering claim: (1) two or more predicate offenses

---

[6] R.C. § 2305.401 also "does not limit" traditional product liability claims or breach of express warranty claims against firearm industry members. *See* R.C. § 2305.401(6)(C)(2) and (3).

constituting racketeering activity; (2) the existence of a RICO enterprise; (3) a pattern of racketeering activity undertaken by the RICO enterprise; and (4) conduct amounting to the direct participation in the enterprise's affairs. *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000) *see also Ouwinga v. Benistar 419 Plan Servs., Inc.,* 694 F. 3d 783, 791 (6th Cir. 2012). Additionally, civil plaintiffs must also plead facts which show that the alleged RICO violation was the proximate cause of Plaintiff's injury. *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 484 (6th Cir. 2013). These necessary allegations are subject to heightened scrutiny in this case because allegations of mail and wire fraud as predicate acts require pleading with particularity sufficient to meet Rule 9(b)'s pleading standards.[7] *Knox v. Navient*, No. 2:18-CV-1198, 2019 WL 484474, at *3 (S.D. Ohio Feb. 7, 2019).

Far from alleging all elements required to properly state a RICO claim and avoid dismissal, Plaintiff fails to allege any of the required elements necessary to state such a claim. Specifically, Plaintiff fails to plead, let alone plead with the particularity required by RICO and Rule 9(b): (a) two predicate acts constituting mail or wire fraud; (b) the existence of a RICO enterprise; (c) a pattern of racketeering activity; and (d) a RICO-type injury as required under 18 U.S.C. § 1962(c). These failures are obvious and warrant dismissal.

---

[7]    Indeed, courts routinely recognize that RICO claims in general, as opposed to underlying predicate acts alleging mail or wire fraud in particular, are subject to the heightened pleading requirement of Rule 9(b). The rationale for imposing this heightened pleading requirement includes: 1) the "*in terrorem*" settlement effect of RICO's treble damages provision; 2) the need to minimize "fishing expeditions;" 3) the fact that the concepts of the statute are so nebulous that, in the absence of particularity, a defendant would have no effective notice of a claim showing that a pleader is entitled to relief; and 4) the unfairness of labeling a defendant in commercial litigation as a racketeer. *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 777 (7th Cir. 1994); *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir. 1992); *Hexagon Packaging Corporation v. Manny Gutterman & Associates, Inc.*, 120 F.Supp.2d 712, 721 (N.D.Ill. 2000); *Schnitzer v. Oppenheimer & Co., Inc.*, 633 F.Supp. 92, 97 (D.Or. 1985); *Taylor v. Bear Sterns & Co.*, 572 F.Supp. 667, 682 (N.D.Ga. 1983).

## A. Plaintiff has failed to plead with particularity predicate acts of mail or wire fraud.

In its Complaint, the only RICO predicate alleged by Plaintiff is mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. (Doc.1 at ¶¶ 23 and 24). But the Complaint states no facts to support this allegation, let alone facts which meet Rule 9(b)'s stringent pleading standards. Indeed, the sum total of Plaintiff's pleading in this regard is to merely cite the existence of the mail and wire fraud statutes, in two duplicative paragraphs (*Id*. at ¶¶ 16 and17), and then make the facially inadequate claim that defendants committed "numerous acts of mail and wire fraud." (*Id*. at ¶ 23). Little argument is needed here as there can be no serious contention that such vague and conclusory assertions properly allege mail and wire fraud.

To survive a motion to dismiss, a complaint for mail and wire fraud must plead facts showing that a defendant: (1) intentionally devised or participated in a scheme to defraud another of money or property, (2) used the mail or interstate wire communication to further that scheme; and that (3) the defendants did so with a specific intent to deceive or defraud. *Heinrich v. Waiting Angels Adoption Services*, *Inc.*, 668 F.3d at 403. Generally, a complaint complies with Rule 9(b)'s heightened pleading standards "if it alleges 'the time, place, and content of the alleged misrepresentation on which [the deceived party] party relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud,' and enables defendants to 'prepare an informed pleading responsive to the specific allegations of fraud.'" *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F. 3d 493, 509 (6th Cir. 2007) (quoting *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F. 3d 634, 643 (6th Cir. 2003)); *Hubbard v. Select Portfolio Servicing, Inc.*, 736 F. App'x 590, 593 (6th Cir. 2018). Plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."

*Frank v. Dana Corp.*, 547 F. 3d 564, 570 (6th Cir. 2008) (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)).

Plaintiff's "conclusory assertion" that the mail and wire fraud statutes have been violated falls far short of these requirements. In its Complaint, Plaintiff sets forth no facts at all, let alone particularized facts, in support of its mail and wire fraud claims. Completely absent are the required particularized allegations identifying the alleged "speaker" of the fraudulent statement, the time, place or content of the purported fraudulent statement, the fraudulent intent of any defendant, let alone all defendants, the identity of the deceived party, what, exactly, the deceived party relied upon, or the injury resulting from the fraud. Instead, Plaintiff, in a single paragraph, merely sets forth the "conclusory assertion" that the mail and wire fraud statutes have been violated. Plaintiff's conclusory allegations are precisely those that the Supreme Court has held should be summarily disregarded for purposes of dismissal. *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). As such, Plaintiff fails to plead mail and wire fraud, and the entirety of Plaintiff's RICO claim must be dismissed as a matter of law.

### B. Plaintiff has failed to plead the existence and nature of a RICO enterprise.

As with its mail and wire fraud claims, Plaintiff fails to plead any facts, let alone particularized facts, supporting the existence of a RICO enterprise. Section 1962(c) of RICO makes it unlawful for a person "employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *In re ClassicStar,* 727 F.3d at 483. A RICO "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

Plaintiff devotes only a generic paragraph in its Complaint to the existence of an enterprise, stating:

> A racketeering enterprise exists among the Defendants to unlawfully place weapons meant to operate in military environments, into the hands of civilians under the pretexts of sports and amusement weaponry. The enterprise operates through all Defendants. Defendants combined, conspired, confederated and agreed with each other and with others known and unknown to Plaintiff to devise and intend to devise a scheme and artifice to increase profits by the misrepresentation of the purpose of assault weapon [sic] by means of false and fraudulent pretenses, representations, and promises.

Doc.1 at ¶ 19. In that very same paragraph, Plaintiff simply concludes, without any factual basis, that "the enterprise has an organizational structure." (*Id.*)

Nothing in this paragraph even approximates what Plaintiff must allege to establish the existence of a RICO enterprise. Specifically, Plaintiff fails to allege: (1) the identity and distinction between an alleged RICO "person" and the RICO "enterprise"; (2) how and why all members of the enterprise shared a common purpose or relationship; (3) how the members of the alleged enterprise coordinated as a continuing unit; and (4) which of those members controlled or conducted the affairs of the enterprise. Each of these failures, standing alone, is fatal to Plaintiff's RICO claim, together they emphasize the complete failure of the Complaint.

### (i) Plaintiff fails to plead facts showing a distinction between the RICO "person" and the RICO "enterprise."

In its Complaint, Plaintiff fails to allege any RICO "person" let alone how any RICO "person" is separate and distinct from the purported RICO enterprise. This distinction is critical for pleading purposes because Section 1962 of RICO only prohibits "persons" (those alleged to have violated the act) from using an "enterprise" for racketeering purposes. 18 U.S.C. § 1961(a).

"To establish liability under § 1962(c), one must thus allege and prove the existence of two distinct entities: (1) a "person;" and (2) an "enterprise" that is not simply the same person by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001); *In re ClassicStar,* 727 at 490. Put another way, under RICO, the RICO "person" (or defendant) alleged

to be responsible for violating the RICO statutes must be separate and distinct from the alleged criminal enterprise itself. This is because RICO "liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *Miller v. Countrywide Home Loans*, 747 F. Supp. 2d 947, 964-65 (S.D. Ohio 2010) (pleadings inadequate for failing to allege corporation was distinct from alleged enterprise) (citing *Palmer v. Nationwide Ins. Co.*, 945 F. 2d 1371, 1373 (6th Cir. 1991)).

Plaintiff's failure to allege any RICO "person," and how that "person" is separate and distinct from an alleged RICO enterprise warrants dismissal of its RICO claim.

### (ii) Plaintiff fails to plead facts showing the members of the enterprise shared a common purpose, relationship, or longevity.

The wholly insubstantial nature of Plaintiff's RICO allegations is maybe best illustrated by its bare allegation that "the enterprise has an organizational structure" (Doc. 1 at ¶ 19). That allegation presumably seeks to satisfy RICO's requirement that an associated-in-fact enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 945-46 (2009). In this regard, a Plaintiff must show the ability of the alleged enterprise to exist separate and apart from the pattern of racketeering activity in which it is allegedly engaged. *See Boyle,* 556 U.S. at 947; *Ouwinga,* 694 F.3d at 790.

An association-in-fact enterprise also "require[s] a certain amount of organizational structure which eliminates simple conspiracies from the Act's reach." *VanDenBroeck,* 210 F.3d at 699, *abrogated on other grounds, Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

Plaintiff fails to describe any purpose or structure at all. Instead, it mentions the perfectly lawful conduct and simply adds to that conclusory statements regarding the alleged "goals" of the enterprise. For example, Plaintiff asserts that the first "goal" of the enterprise is "to manufacture a facially legal weapon," and to conduct a "business scheme to reap profits." (Doc. 1 at ¶ 19(a)). In other words, the first goal is, apparently, to engage in perfectly legal commerce. Plaintiff then simply concludes that Defendants: intended to increase profits by "misrepresenting" the purpose of assault weapons; intended to enter into contracts with certain unidentified individuals who "intended to commit terrorist acts;" and intended to make money for shareholders "and to circumvent federal laws against terrorism." (Doc.1 at ¶ 19(b),(c), and (d)). Such conclusory assertions are not enough to survive dismissal. *See Iqbal* 556 U.S. at 679 (2009); *Twombly*, 550 U.S. at 555.

### (iii) Plaintiff fails to plead facts showing how the members of the alleged enterprise coordinated as a continuing unit.

Similarly Plaintiff fails to set forth any facts showing how, exactly, the Defendants coordinated in such a way as to function as a continuing unit. In pleading an association-in-fact enterprise, a RICO plaintiff must also "cogently allege activity 'that would show *ongoing, coordinated behavior among the defendants . . . .*'" *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000) (citing *Frank v. D'Ambrosi,* 4 F.3d 1378, 1386 (6th Cir. 1993)).

*Begala* is particularly instructive here as that case contained almost identical pleading failures. The plaintiff there alleged that several banking institutions and its employees had engaged in a fraudulent scheme concerning loan repayments. *Id.* The Sixth Circuit affirmed the lower court's Rule 12 dismissal of the RICO claim because the plaintiff there simply listed a string of entities allegedly comprising an enterprise, and then listed a string of racketeering

activities in which the enterprise purportedly engaged. *Id*. No RICO claim was pled because the complaint was "entirely devoid of . . . factual allegations" concerning coordination. *Id.* at 782.

Like *Begala*, Plaintiff simply lists a string of entities consisting of Defendants and possibly "others known and unknown to Plaintiff." (Doc. 1 at ¶ 19). Beyond the conclusory statements that "[t]he enterprise has an organizational structure," and the Defendants "combined, conspired, confederated and agreed with each other," the complaint fails to allege facts even suggesting that Defendants coordinated in such a way that they functioned as a continuing unit.

### (iv) Plaintiff fails to plead facts showing how each member of the enterprise participated in the conduct of the enterprise's affairs.

Wholly absent from the Complaint are any allegations alleging how any Defendant conducted or participated in the conduct of the enterprise's affairs. "[F]or a defendant to violate § 1962(c), that defendant must have not merely participated in the enterprise's affairs, 'but *in the conduct* of the enterprise's affairs." 18 U.S.C. § 1962(c); *Ouwinga*, 694 F.3d at 792. Participation in the conduct of an enterprise's affairs requires proof that the defendant participated in the "operation or management" of the enterprise, "not just their own affairs." *Reves v. Ernst & Young*, 507 U.S. at 183, 185.

Given the Plaintiff's complete failure to allege an enterprise, it not surprisingly also fails to allege how defendants "conducted or participated in the conduct of the 'enterprise's affairs.' In fact, to the extent the Complaint makes any allegations, they compel the conclusion that each Defendant participated "in their own affairs." This, alone, mandates dismissal of Plaintiff's RICO claims.

### C. Plaintiff has failed to plead a pattern of racketeering activity.

In addition to alleging predicate acts and the existence of a RICO enterprise, to avoid dismissal, a plaintiff must also allege that the enterprise engaged in a "pattern of racketeering

activity." The only mention of a RICO "pattern" in the entire Complaint lies in Plaintiff's legal conclusion that Defendants conducted the "enterprise's affairs through a pattern of racketeering activity." Obviously, this bare recitation of RICO's statutory "pattern" requirement does not properly allege a "pattern of racketeering activity."

While Plaintiff does make conclusory allegations of mail and wire fraud, even if they had been pled with sufficient facts, the Complaint still would fail. Merely alleging two predicate acts does not satisfy the pattern requirement. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n.14 (1985). Rather, the plaintiff must show "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–39 (1989) (emphasis added); *Ouwinga,* 694 F.3d at 795-96. Plaintiff fails to do so.

### D. Plaintiff has failed to allege any RICO injury.

Plaintiff fails to plead any injury, let alone injury caused proximately by, and but-for a violation of the racketeering statutes. In the absence of such pleading, Plaintiff lacks standing to bring a RICO claim.

Dismissal is appropriate where Plaintiff has failed to plead RICO injury: that a RICO violation was the "proximate cause of the injury to their business or property." *In re ClassicStar* 727 F.3d at 484. In this regard, under 18 U.S.C. 1964(c), a Plaintiff must plead both but-for causation and proximate causation. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 653–54 (2008). Plaintiff must show "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992); *see also Perry v. Am. Tobacco Co., Inc.*, 324 F.3d 845, 850 (6th Cir. 2003). Plaintiff must show that the defendants' wrongful conduct was "a substantial and foreseeable cause" of the injury and the

relationship between the wrongful conduct and the injury is "logical and not speculative." *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 615 (6th Cir.2004).

Nothing in the Complaint can even remotely be viewed as satisfying this requirement. Plaintiff simply asserts that it has been "damaged by Defendants' violation of the federal RICO statute." (Doc. 1 at ¶ 26). This assertion, like so many others in the Complaint, is vague and conclusory, and not enough to state a claim as a matter of law. *See Iqbal* 556 U.S. at 679; *Twombly*, 550 U.S. at 555.

### E. Private civil RICO plaintiffs cannot maintain actions for equitable relief.

Finally, even if Plaintiff had set forth particularized facts sufficient to plausibly state a RICO claim under RICO's heightened pleading standard, it is doubtful that Plaintiff would be entitled to injunctive relief under the RICO statutes at all. Specifically, the Ninth Circuit in *Religious Technology Ctr. v. Wollersheim*, 762 F. 2d 1076, 1077 (9th Cir. 1986), held that "injunctive relief is not available to a private RICO plaintiff in a civil RICO action." The court in *Wollersheim* relied on the plain language of 18 U.S.C. § 1964, specifically subsection (c), the private RICO provision, and legislative history to reason that "the single statutory reference to private plaintiffs, and the identification of a damage and fees remedy for such plaintiffs in part (c), logically carries the negative implication that *no other remedy* was intended to be conferred on private plaintiffs." *Id.* at 1083 (emphasis in original).

Although the Seventh Circuit, in *National Organization for Woman, Inc. v. Scheidler*, 267 F. 3d 687 (7th Cir. 2001), *rev'd on other grounds*, 547 U.S. 393 (2006), disagreed, the Sixth Circuit in the unpublished opinion *Ganey v. Raffone*, 91 F. 3d 143 n. 6 (6th Cir. 1996), found the "*Wollersheim* analysis persuasive." But because the court resolved the case on other grounds, it did not rule on whether injunctive relief was available to the plaintiff. *Id*. Thus, were the Sixth Circuit presented with this issue, it is likely that it would follow *Wollersheim* and hold that

injunctive relief is not available to private RICO plaintiffs.

### IV. Plaintiff has failed to plead the elements of an intentional misrepresentation claim.

In Ohio, the elements of an intentional misrepresentation claim are: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to a transaction, (3) made falsely, with knowledge of its falsity, or with such disregard and recklessness as to the veracity of the representation that knowledge may be inferred, (4) with intent of misleading another into relying on the representation or concealment, (5) justifiable reliance on the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Burr v. Stark Cty. Bd. Of Commrs*., 23 Ohio State 3d 69, 491 N.E. 2d 1101, 1102 (Ohio 1986). Allegations supporting these elements are subject to the heightened pleading requirements of Rule 9(b). *Cap City Dental Lab, LLC v. Richard Ladd*, No. 2:15-CV-2407, 2016 WL 4573993, at *3 (S.D. Ohio Sept. 1, 2016). At minimum, a plaintiff must allege the time, place and contents of the misrepresentation on which it relied, the defendant's fraudulent intent and the injury resulting from the fraud. *Id*.

Here, Plaintiff alleges that Defendants "misrepresented the purpose" of the semi-automatic rifles they manufacture and sell, and nothing more. Plaintiff does not sufficiently plead facts regarding the content of any such representation; how and when it was made by each Defendant; or that such a representation was false. Plaintiff also does not sufficiently plead that it was engaged in a transaction with any Defendant, or how such a representation was material to a transaction or Plaintiff's business; that any Defendant made such a representation with an intent to mislead Plaintiff; or that Plaintiff justifiably relied on such a representation in operating its business.

Although it is not clear, Plaintiff presumably claims, albeit inadequately, that any

representation made by a Defendant regarding the lawful uses to which semi-automatic rifles can be put—hunting, self-defense and target shooting—were false and fraudulent. Such an allegation, if properly and sufficiently pleaded by Plaintiff, would itself be demonstrably false, or in *Twombly* and *Iqbal* terms, implausible on its face. *See e.g., Shew*, 994 F. Supp.2d at 245. Courts have recognized that millions of Americans own and use these types of firearms for entirely lawful purposes. Any attempt by Plaintiff to amend its pleadings and state a cause of action for intentional misrepresentation—or violation of RICO—would be futile. *Riverview Health Institute LLC v. Medical Mutual of Ohio,* 601 F. 3d 505, 520 (6th Cir. 2010) (a proposed amendment is futile if it would not withstand a Rule 12(b)(6) motion to dismiss).

### V. The Court does not have jurisdiction to hear Plaintiff's case because Plaintiff does not have standing to seek injunctive relief.

Even if (1) Plaintiff had adequately pleaded RICO and intentional misrepresentation claims, (2) Defendants did not have statutory immunity for those claims, (3) enjoining Defendants' lawful manufacture and sale of legal firearms did not violate the separation of powers doctrine, Plaintiff's Complaint should still be dismissed and its request for injunctive relief denied. The Court does not have jurisdiction to hear Plaintiff's claims because Plaintiff does not have standing to seek injunctive relief.

Standing is a threshold question in every case, and the judicial power of an Article III court is limited to actual "cases" or "controversies." U.S. CONST. ART. 2 § 1. To have standing, three elements must be present: (1) the plaintiff must have suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be causal connection between the injury and the conduct complained of that is fairly traceable to the defendant's action, and not the result of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a

favorable decision of the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 56-61 (1992) (injury in fact, causation and redressability). The party invoking the jurisdiction of the court bears the burden of establishing these elements. *Id*. at 561.

Here, Plaintiff cannot meet its burden on any of these elements. Plaintiff has not suffered a particularized "injury in fact" but complains hypothetically that an injury to its business may be imminent. There is no alleged factual basis on which the Court can conclude that Plaintiff—in contrast with any other business or individual—is likely to be the victim of imminent criminal firearms violence. *See Coyne v. American Tobacco Co*., 183 F. 3d 488, 494 (6th Cir. 1999) (To have standing, "a plaintiff's claim must be more than a 'generalized grievance' that is pervasively shared by a large class of citizens.") (citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982)). Indeed, Plaintiff claims to represent the grievances of "all persons … in the United States." (Doc. 1 at ¶8).

Moreover, past wrongs do not in and of themselves amount to a real and immediate threat of injury to show a case or controversy. *See City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) (plaintiff injured by a police chokehold lacked standing to seek injunctive relief because it was speculation to conclude he would again be injured in a chokehold); *Rizzo v. Goode*, 423 U.S. 362 (1976) (holding that injury in fact not shown where claim rested on what a small unnamed minority of policemen might do to plaintiffs in the future). Plaintiff's generalized fear that what happened before to others will happen to its business is not concrete, but conjectural, and it is not sufficient to confer jurisdiction in this Court.

Plaintiff has also not sufficiently pleaded that its perception of threatened injury would be plausibly traceable to any one of the Defendant's business practices, and not the result of a third

party's criminal actions. First, Plaintiff has not alleged facts from which it can be plausibly inferred that any Defendant caused a prior act of criminal firearms violence that allegedly justifies Plaintiff's alleged fear of a future imminent injury. Second, it would be speculation to conclude that if Plaintiff becomes a victim of criminal firearm violence, the firearm used would be traceable to one of the Defendants. Third, the Court could plausibly conclude the criminal violence Plaintiff fears and any injury suffered would be the result of a third party's criminal act.[8]

Lastly, Plaintiff has not sufficiently pleaded that the injury it fears will be redressed by the injunctive relief sought. There are presently nearly 400 million civilian-owned firearms in the United States, including millions of firearms of the type Plaintiff seeks to ban in this case by court order. *See Shew*, 994 F. Supp. 2d at 245.[9] It is judicially noticeable that firearms of all types are used criminally, and have been used specifically in mass shootings, including pistols, revolvers, rifles and shotguns.[10] Indeed, "[s]emi-automatic handguns are far more prevalent" in mass shootings than "firearms that would be typically classified as assault weapons." James Alan Fox & Monica J. DeLateur, *Mass Shootings in America*, 18 HOMICIDE STUD. 125, 136 (2014).[11] It is thus speculative to conclude that prohibiting the sale of newly manufactured firearms of just one narrow type would redress the threat of injury Plaintiff perceives. *See Steel Co. v. Citizens*

---

[8]     Plaintiff references in its Complaint three recent acts of criminal violence that occurred in Dayton, El Paso and Brooklyn, but notably does not allege that the firearms used those tragedies are traceable to one of the Defendants in this case.

[9]     Aaron Karp, *Small Arms Survey, Estimating Global Civilian-Held Firearm Numbers*, June 2018. http://www.smallarmssurvey.org/about-us/highlights/2018/highlight-bp-firearms-holdings.html (last viewed Aug. 30, 2019).

[10]     U.S. Mass Shootings, 1982 – 2019, http://www.motherjones.com/politics/2012/12/mass-shootings-mother-jones-full-data. (last viewed Aug. 30, 2019).

[11]     Available at http://goo.gl/Ji7Yyp (last viewed Aug. 30, 2019).

*for a Better Environment*, 523 U.S. 83, 108 (1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of redressability.")

## **CONCLUSION**

Defendants do not minimize the senseless tragedies that have occurred as the result of criminals misusing firearms, but Plaintiff's attempt to revise the national, state and local regulatory frameworks applicable to the manufacture and sale of firearms—by court order—is contrary to law and should be rejected for the reasons set forth above. Defendants respectfully request that Plaintiff's Emergency Application for an Immediate Temporary Writ Enjoining the Distribution of Assault Weapons, and for Preliminary and Permanent Injunctive Relief be dismissed and Plaintiff's request for preliminary and permanent injunctive relief be denied.

Respectfully submitted,

/s/ Robert W. Trafford
Robert W. Trafford (0024447), Trial Attorney
Elizabeth L. Moyo (0081051)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 South High Street
Columbus, Ohio 43215
Tel: (614) 227-2149 / Fax: (614) 227-2100
email:  rtrafford@porterwright.com
          emoyo@porterwright.com
*Attorneys for Defendants Smith & Wesson
Corp.; Remington Arms Company LLC;
Bushmaster Firearms International; Sig Sauer,
Inc.; DPMS Firearms; Sturm, Ruger & Co.,
Inc.; Colt's Manufacturing Company, LLC;
and Armalite*

Robert L. Joyce (*pro hac vice* application
forthcoming)
LITTLETON PARK JOYCE UGHETTA &
KELLY LLP
4 Manhattanville Road, Suite 202
Purchase, New York 10577
Tel: (914) 417-3412 / Fax; (914) 417-3401
Email: Robert.Joyce@littletonpark.com
*Attorneys for Sig Sauer, Inc.*

Andrew A. Lothson (admitted *pro hac vice*)
 SWANSON, MARTIN & BELL, LLP
 330 North Wabash, Suite 3300
 Chicago, IL 60611
Tel:  (312) 321-9100 / Fax: (312) 321-0990
 Email: alothson@smbtrials.com
*Attorneys for Remington Arms Company, LLC*

Gaya Shanmuganatha (admitted *pro hac vice*)
TIFFANY & BOSCO P.A.
2525 E. Camelback Road, Seventh Floor
Phoenix, Arizona 85016
Tel: 602-255-6000 / Fax: 602-255-0103
Email: gs@tblaw.com
*Attorneys for Armalite*

John Renzulli (*pro hac vice* motion pending)
Christopher Renzulli (*pro hac vice* motion
pending)
RENZULLI LAW FIRM, LLP
One North Broadway, Suite 1005
White Plains, New York 10601
Tel: 914-285-0700 / Fax: 914-285-1213
Email: jrenzulli@renzullilaw.com
          crenzulli@renzullilaw.com
*Attorneys for Colt's Manufacturing Company,
LLC*

Edward Scheideman (admitted *pro hac vice*)
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
Tel: 202.799.4534 / Fax: 202.799.5534
Email: edward.scheideman@dlapiper.com
*Attorneys for Smith & Wesson Corp nka
American Outdoor Brands and Sales Company*

James B. Vogts (admitted *pro hac vice*)
SWANSON, MARTIN & BELL, LLP
330 North Wabash, Suite 3300
Chicago, IL 60611
Tel:  (312) 321-9100 / Fax: (312) 321-0990
Email: jvogts@smbtrials.com
*Attorneys for Sturm, Ruger & Company, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 3, 2019, I served the foregoing *Defendants'*

*Memorandum of Law in Support of Motion to Dismiss* pursuant to Fed.R.Civ.P. 5(b)(2)(E) and

S.D. Ohio Civ. R. 5.2, by electronically filing the pleading using the CM/ECF system, which will

send notification of such filing to all counsel of record.

/s/ Robert W. Trafford
Robert W. Trafford